UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Case No. _____

In the Matter of:


MICHELLE FERGUSON,                        }
                                          }
                    Plaintiff,            }
                                          }
            vs.                           }
                                          }
LOCAL 689, AMALGAMATED TRANSIT            }
      UNION, (2701 Whitney Place, Forestville, }
      Maryland, 20747), JACQUELINE JETER, }
      (2701 Whitney Place, Forestville, Maryland, }
      20747), WAYNE GARLAND (2701         }
      Whitney Place, Forestville, MD, 20747) and }
      MICHAEL GOLASH, (5325 16th Street, NW} 
      Washington, DC, 20011)              }
                                          }
                    Defendants.           }
_____}


NOTICE OF REMOVAL
TO UNITED STATES DISTRICT COURT

D.C. Superior Court - - - - Civil Action No.  2008 CA 003492 B


Attached are the original Complaint filed by Michelle Ferguson in D.C. Superior

Court Civil Action No. 2008 CA 003492 B.  Also attached are Answers and Motions to Dismiss

filed by Defendants in the Superior Court.  Defendants now remove this matter to the United

States District Court for the District of Columbia, on the following grounds:


    A.    This matter was filed by Plaintiff Michelle Ferguson in the Superior Court
          for the District of Columbia and arises out of her employment by the

Washington Metropolitan Area Transit Authority as a bus operator.

B.    Plaintiff Ferguson  was employed as a bus operator by the Washington Metropolitan Area Transit Authority, "WMATA."

B.    Defendants include her Union and various current and former officers of that Union, all of whom represented her in collective bargaining with WMATA.

C.    The gravamen of this lawsuit concerns the employment of Michelle Ferguson by WMATA, the disposition of the grievance she filed against that termination and the representation of her Union in pursuing the grievance.

D.    The United States District Court has original jurisdiction over employment disputes arising at WMATA under the Legislative Compact which enables it, and an action initiated in the Superior Court is removable to the United States District Court.  D.C. Code Section 9-1107.01- 81.

Accordingly, the Union and other Defendants remove this matter to the United States District

Court, under 28 U.S.C. Section 1446, without further delay.

Defendants LOCAL 689,
AMALGAMATED TRANSIT UNION,
JACQUELINE JETER, ANTHONY
GARLAND AND MICHAEL GOLASH, by
their Attorneys,

Douglas Taylor
Paul M. Tyler

Gromfine & Taylor
1727 King Street, Suite 210
Alexandria, VA  22314

(703) 683-7780

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS__ Local 689, Amalgamated Transit Union, Jackie L. Jeter, Anthony W. Garland & Michael Golash |
|---|---|

**I (a) PLAINTIFFS**

Michelle N.Ferguson

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  D . C .
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**__ Local 689, Amalgamated Transit Union, Jackie L. Jeter, Anthony W. Garland & Michael Golash
COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   P . G .
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

ATTORNEYS (IF KNOWN)
Douglas Taylor, Paul M. Tyler

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

□ 1 U.S. Government Plaintiff

☑ 3 Federal Question
(U.S. Government Not a Party)

□ 2 U.S. Government Defendant

□ 4 Diversity
(Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)  **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☑ 1 | □ 1 | Incorporated or Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | ☑ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

□ **A.** *Antitrust*

□ 410 Antitrust

□ **B.** *Personal Injury/ Malpractice*

□ 310 Airplane
□ 315 Airplane Product Liability
□ 320 Assault, Libel & Slander
□ 330 Federal Employers Liability
□ 340 Marine
□ 345 Marine Product Liability
□ 350 Motor Vehicle
□ 355 Motor Vehicle Product Liability
□ 360 Other Personal Injury
□ 362 Medical Malpractice
□ 365 Product Liability
□ 368 Asbestos Product Liability

□ **C.** *Administrative Agency Review*

□ 151 Medicare Act

Social Security:
□ 861 HIA ((1395ff)
□ 862 Black Lung (923)
□ 863 DIWC/DIWW (405(g)
□ 864 SSID Title XVI
□ 865 RSI (405(g)

Other Statutes
□ 891 Agricultural Acts
□ 892 Economic Stabilization Act
□ 893 Environmental Matters
□ 894 Energy Allocation Act
□ 890 Other Statutory Actions (If Administrative Agency is Involved)

□ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

□ **E.** *General Civil (Other)*   OR   □ **F.** *Pro Se General Civil*

**Real Property**
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

**Personal Property**
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

**Bankruptcy**
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
□ 535 Death Penalty
□ 540 Mandamus & Other
□ 550 Civil Rights
□ 555 Prison Condition

**Property Rights**
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

**Federal Tax Suits**
□ 870 Taxes (US plaintiff or defendant
□ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational Safety/Health
□ 690 Other

**Other Statutes**
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC Rates/etc.
□ 460 Deportation

□ 470 Racketeer Influenced & Corrupt Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/ Exchange
□ 875 Customer Challenge 12 USC 3410
□ 900 Appeal of fee determination under equal access to Justice
□ 950 Constitutionality of State Statutes
□ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| □ **G.** *Habeas Corpus/ 2255* | □ **H.** *Employment Discrimination* | □ **I.** *FOIA/PRIVACY ACT* | □ **J.** *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ☑ **K.** *Labor/ERISA (non-employment)* | □ **L.** *Other Civil Rights (non-employment)* | □ **M.** *Contract* | □ **N.** *Three-Judge Court* |
| □ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>☑ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

| □ 1 Original Proceeding | ☑ 2 Removed from State Court | □ 3 Remanded from Appellate Court | □ 4 Reinstated or Reopened | □ 5 Transferred from another district (specify) | □ Multi district Litigation | □ 7 Appeal to District Judge from Mag. Judge |
|---|---|---|---|---|---|---|

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Wrongful Discharge/Dutyof Fair Representation - WMATA DC Code Section 1107.01-81

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS<br>□    ACTION UNDER F.R.C.P. 23 | **DEMAND $** | Check YES only if demanded in complaint<br>**JURY DEMAND:** □ YES    □ NO |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**     (See instruction)     □ YES   ☑ NO     If yes, please complete related case form.

DATE 6/16/08     SIGNATURE OF ATTORNEY OF RECORD     *[signature]*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint.  You may select only one category.  You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

Michelle N. Ferguson
4020 Livingston Road SE Apt., # 303
Washington, DC 20032

RECEIVED
Civil Clerk's Office
MAY 0 5 2008
Superior Court of the
District of Columbia
Washington, D.C.

*Plaintiff*

**08-0003492**

CIVIL ACTION NO. _____

*vs* M. N. F.

~~Local 689 ATU~~
Jacqueline Jeter, President et al
Amalgamated Transit Union Local 689 ATU
2701 Whitney Place
Forestville, Maryland 20747
Et al
Wayne Garland, Assistant Business appointed 689
ATU 2004 to January 1, 2007 *Defendants*
Mike Golash, President Local 689
ATU June 2004 to December 31, 2006

## COMPLAINT

1.  **Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition, as amended, Sec. 11-921.**
As a member of local 689 ATU which is the bargaining unit for me pursuant to section 102 paragraph a and
b & 105 of the "Agreement between WMATA & Local 689 ATU, Effective from May 1, 2004 to June 30,
2008. I was represented by Wayne Garland, Appointed Assistant Business Agent, Executive Board Shop
Steward. On August 2, 2007 this matter was presented on my behalf for Arbitration by the union. Present
for WMATA  D. Richard Froelke for the union Esq., M. Hogan. Arbitrator presiding Shyam Das, Chair.
This matter was ruled in favor of WMATA due to the union's failure to invoke arbitration on my behalf in a
timely manner, violation of section 104 Paragraph d of the agreement between WMATA and local 689
ATU. I was dismissed from WMATA on June 29, 2006. I was requesting to be re-instated with back pay
and all benefits. However, the merits of my arbitration was not heard therefore I am unable to return to my
former position as a bus operator with WMATA. I am asking to be paid at the prevailing rate of bus
operators with all benefits until I am able to retire. I am asking to be compensated at the prevailing rate of
normal retirement for a twenty seven year employee.

**Wherefore, Plaintiff demands judgment against Defendant in the sum of $** 4,561,280.00
**with interest and costs.**

Phone: 202-561-6050

DISTRICT OF COLUMBIA, SS

_Michelle N. Ferguson_ **, being first duly sworn on oath deposes and says that the
foregoing is a just and true statement of the amount owing by defendant to the plaintiff, exclusive of all
set-off and just grounds of defense.**

_Michelle N. Ferguson_
(Plaintiff)                                    Agent)

**Subscribed and sworn to before me this** _5th_ **day of** _May_ **20** _08_.

_____
(Notary Public/Deputy Clerk)

In the Matter of Arbitration      )    Before:    08-0003492
Between:                          )
                                  )
                                  )    Board of Arbitration
                                  )
                                  )
WASHINGTON METROPOLITAN           )    Shyam Das
AREA TRANSIT AUTHORITY            )    Chair
                                  )
                                  )
                                  )    Martin Hogan
         and                      )    Union Member
                                  )
                                  )
LOCAL 689, AMALGAMATED            )    D. Richard Froelke
TRANSIT UNION, AFL-CIO            )    Authority Member


<u>Subject</u>:          Grievance of Michelle Ferguson


<u>Case Heard</u>:       August 2, 2007


<u>Appearances</u>:     On Behalf of the Authority:

                       D. Richard Froelke, Esq.

                   On Behalf of the Union:

                       Martin Hogan, Esq.

<u>BACKGROUND</u>          Michelle Ferguson

     This grievance protests the discharge of Michelle
Ferguson who was employed as a Bus Operator. On June 8, 2006,
Grievant was involved in a bus accident which resulted in a
pedestrian fatality. Following an investigation, the Authority
concluded that this was a "preventable" "major" accident and
dismissed Grievant effective June 29, 2006. Grievant exercised
her right to appeal the accident rating to the Review Board
established under the parties' BUSV Disciplinary Policy for
Preventable Accidents. Her appeal was denied on July 7, 2006.
Thereafter, she filed this grievance on July 10, 2006.

     At the outset of the hearing in this case, the
Authority moved to dismiss this grievance on three procedural
grounds. First, it argued that under the precedent established
in <u>Thomas Fulford</u> (Valtin 2000), an employee who elects to
appeal to the Accident Review Board is not entitled to a <u>de novo</u>
hearing in a grievance arbitration. Second, it argued that the
Union's appeal of this grievance from Step 3 to Step 4 was
untimely. And third, it argued that this grievance was not
appealed from Step 4 to arbitration in a timely manner. The
Authority also requested that the Board bifurcate the hearing so
as to rule on its procedural objections before taking evidence
on the merits.

     The Union objected to the Authority's request for
bifurcation. The Union also argued that even if the Accident
Review Board's determination that Grievant was involved in a
"preventable" "major" accident was found to be binding on this
Board, Grievant was still entitled to pursue her claim that the
Authority lacked sufficient cause to discharge her for this

2                    Michelle Ferguson

offense under all the facts and circumstances.  The Union
further argued that the Authority had waived any objections to
the Union's request for a Step 4 conference, and that there was
no basis for upholding the Authority's claim that this grievance
should be dismissed because it was not timely appealed to
arbitration.

At the hearing held on August 2, 2007, the parties
presented evidence relating to the Authority's procedural
objections.  During the course of the hearing, the Chair made
the following determination:

> I have determined that the review board
> decision relied on by the Authority is
> binding on this panel with respect to the
> rating of the accident, that is, that it was
> a preventable major accident.  I think that
> follows from the Fulford decision and from
> the actual language included in Joint
> Exhibit 2 [May 1, 1996 BUSV Disciplinary
> Policy for Preventable Accidents].  I am not
> persuaded at this point that the binding
> nature of that decision extends to the
> degree of discipline imposed on Ms.
> Ferguson.  Without prejudice to the
> Authority's right to continue to argue that
> point and present evidence to support it,
> there will be no bifurcation in this case
> based on the review board's decision.  That
> portion of the Authority's argument that we
> should bifurcate because we can dispose of
> the case based on that [is denied].

For a number of practical reasons, it would not have
been possible to begin the presentation of evidence on the
merits of this grievance at the August 2, 2007 hearing, even if

                                            3                    Michelle Ferguson


there was no bifurcation.  It was agreed that, on a non-
precedent basis and without prejudice to either party's position
on the issue of bifurcation as a general matter, the parties
would submit written arguments with respect to the two
timeliness issues raised by the Authority, and the Board would
attempt to rule on that motion before the next scheduled hearing
day.

        On August 30, 2007, after receipt of written
arguments, the Chair notified the two party arbitrators that he
had concluded tentatively that this grievance should be
dismissed because the Union's invoking of arbitration was
untimely.  The Chair also provided the other Board members with
a legal memorandum outlining the basis for his determination.
The Board met in executive session on September 6, 2007, after
which the Chair drafted the present Opinion.

        Set forth below are the parties' contentions and the
Board's findings on the issue of whether this grievance should
be dismissed because the Union's invocation of arbitration was
untimely.  In light of the Board's findings on that issue, it is
unnecessary to make any ruling with respect to the Authority's
alternate position that the grievance should be dismissed
because the appeal from Step 3 to Step 4 was untimely.

                                    CONTENTIONS

        Both parties cite Section 104(b) of the Collective
Bargaining Agreement (CBA), which sets forth the grievance

4          Michelle Ferguson

procedure, in support of their respective positions.  In
relevant part, Section 104(b) provides:

> Step 4 - If the Union, through the Business
> Agent (or the Business Agent's designee), is
> not satisfied with the Step 3 decision, it
> may appeal the grievance by requesting a
> conference with the General Manager (or the
> General Manager's designee) within ten (10)
> working days of receipt thereof.  The
> General Manager (or the General Manager's
> Designee) will hold said conference and
> issue a written decision within twenty (20)
> working days of the receipt of the Step 4
> grievance or the Step 3 appeal.
>
> Step 5 - If the Union is not satisfied with
> the Step 4 decision, it may, within sixty
> (60) calendar days after receipt thereof,
> invoke arbitration in accordance with
> Section 105 of this Agreement.

The Authority points out that the Step 4 conference in
this case was held on October 5, 2006.  Present were Labor
Relations Officer Jerome Artis and Assistant Business Agent
Anthony Garland.  At the conclusion of the conference, Artis
wrote on the grievance form that it was "Denied" at Step 4, and
signed and dated it.  The Authority stresses that the Union did
not appeal this case to arbitration until February 9, 2007,
almost 120 calendar days after the Step 4 denial —— far longer
than the 60 days provided for in Section 104(b).  The Authority
further argues that Artis and Garland had an understanding that
no further "written decision" by Artis would be necessary in
this case, so that the October 5, 2006 denial constituted the
required "written decision".  In any event, the Authority

5                    Michelle Ferguson

asserts, even if the Union failed to receive what it considers
to be a Step 4 written decision within 20 working days of
receipt of the Step 3 appeal, the Union's remedy was to invoke
arbitration. See Wallace Ridgeway (LaRue 2001).

The Union contends that the Authority violated Section
104(b) by failing to issue a mandatory Step 4 "written
decision". It asserts that the evidence shows that the
Authority routinely issues such decisions, which then trigger
the 60-day clock for the Union to invoke arbitration. Simply
writing "Denied" on the grievance, the Union insists, does not
constitute the required written decision. The significance of
such decisions, the Union adds, has been emphasized in prior
WMATA/Local 689 arbitration decisions. See: Carlton Young
(Bloch 1981); David King (Felderman 1983); Michael Powell
(Vaughn 2002) and Edward Chaghuza and Troyen Nguyen (Meredith
2003).

The Union asserts that without the issuance and
receipt of the written Step 4 decision, there is no accrual
point from which to commence the 60-day period for invoking
arbitration. See: Michael Powell. Moreover, the Union argues,
general notions of industrial due process and the precedent
between these parties preclude the Authority from relying upon
an alleged procedural violation by the Union, when the Authority
itself violated a significant and mandatory substantive and
procedural provision of the CBA by failing to provide a written
Step 4 decision.

6          Michelle Farguson

### FINDINGS

In <u>Carlton Young</u>, decided in 1981, the Authority
sought to have the grievance dismissed on the grounds that it
was not appealed to arbitration until well beyond the 60-day
limit set forth in Section 104(b).  In that case, the
Authority's Step 4 representative had written on the grievance
form: "Denied.  Written decision to follow."  No such "written
decision" was provided, despite repeated efforts by the Union to
secure such decision.  In rejecting the Authority's timeliness
argument in that case, the Board stated:

> In this case, the finding is that the issue
> is arbitrable.  The collective bargaining
> agreement clearly requires, in step four of
> the grievance procedure that:
>
> > The General Manager or his designee
> > shall issue a written decision within
> > ten working days of the conference with
> > the Union.
>
> Unquestionably, this has been interpreted
> and applied by these parties to mean more
> than a mere denial, as is evident, among
> other things, in Mr. Leonard's response
> itself.  Step four responses have routinely
> and historically followed a format that
> includes the facts, the parties' respective
> positions and the findings of the employer.
> The document thereby serves as a useful
> working tool for further discussion and
> potential settlement.  Failure to comply
> with this contractual requirement
> constitutes a serious impediment to the
> successful operation of the dispute

7                    Michelle Ferguson

resolution machinery.  The authority may not
breach its obligation to respond in a timely
fashion while, at the same time, demanding
strict compliance by the Union.

This is not to say such failure by the
Authority will result in the Union's
acquiring the unlimited right to file the
matter at any time.  Admittedly, there was a
considerable delay in this case.  According
to the record, however, the Union made
continuing and repeated efforts to secure an
answer from the Director of Labor Relations
in the interim, to no avail.  This was not a
case of its allowing the matter to lie
dormant.  In this particular case, then, the
conclusion is that the matter is arbitrable.

The 1983 decision in David King, in what appears to be
dicta (given the ultimate rationale in that decision for
rejecting the Authority's procedural claims) restates the
holding in Young as follows:  "...failure to issue a written
decision where required at one step of the grievance procedure
precludes the Employer from claiming untimeliness at the next
succeeding step, if there are in the interim unheeded repeated
demands for the decision...."

In the 2002 Michael Powell case, the Authority argued
that the 60-day period for invoking arbitration should begin on
the date of the Step 4 meeting when it "denied" the grievance —
not the date on which the Union received a "follow up" denial
letter.  The Powell decision includes the following relevant
determination:

8                          Michelle Ferguson

The evidence establishes that in the Step 4
meeting, the WMATA representative promised
to supply the Union Business Agent, who was
relatively new to the job, with a written
decision.  This action conveyed the
appearance that the Authority believed that
the 60 day time period would not begin to
toll until "sixty (60) calendar days after
receipt thereof," as the Agreement clearly
indicates.  The Agreement appears to
contemplate a written response so the Union
may review and evaluate the reasoning
supplied therein, and make a determination
as to whether to invoke arbitration.
Regardless of whether a written decision
denying each grievance is contemplated in
the Agreement, it is clear that the Parties
contemplated such a response in this
instance....

In Powell, the arbitrator held the 60-day period should begin on

the date the Union received the "promised" denial letter.

In the 2001 Wallace Ridgeway decision, which did not

involve an issue relating to the timeliness of appeal to

arbitration, the Board rejected the Union's argument that the

Authority's failure to provide a written decision at Step 4

within the 20-working day period specified in the CBA is grounds

for sustaining the grievance.  The Board pointed out that the

Union's remedy:  "...is to deem the Authority's position at Step

4 to be unsatisfactory, the Authority having failed to make a

timely response.  The Union then may proceed to arbitration of

the grievance."  That is to say, once the 20-working day period

has expired, if the Union considers management to have failed to

provide the required decision, it can file an appeal to

9                    Michelle Ferguson

arbitration.[1]  There is a similar ruling in <u>Edward Chaghuza and Troyen Nguyen</u>.

The precedent cited above seems to this Board to support the proposition that the Authority is generally required under Section 104(b) of the CBA to provide a "written decision" at Step 4, beyond merely writing "Denied" on the grievance.  The Union's practice evidence also supports this conclusion.  The parties' Step 4 representatives, of course, may agree to waive that requirement in a particular case.  Moreover, there is no precedent holding that if the Authority does not provide such a "written decision", the Union has unlimited time in which to appeal a grievance to arbitration because the start of the 60-day time limit in Section 104(b)-Step 5 of the CBA was never triggered.  On the contrary, the earliest cited precedent, <u>Carlton Young</u>, clearly rejected such an approach.  If the Union believes that the Authority has failed to provide the required written decision within the 20-working-day period, the Union is entitled to invoke arbitration, and cannot unreasonably delay doing so, taking into account all relevant circumstances.

The cited precedents also make clear that issues of this sort have been and are to be decided on a case-by-case, fact-specific basis.

---

[1] The Union acknowledges it can do this, and the Authority has pointed to a recent case in which the Union appealed a grievance to arbitration prior to receiving the Step 4 written decision.

10                    Michelle Ferguson

The facts in this case show that there was no real
discussion of the merits of this grievance at Step 4 because of
the ruling by the Accident Review Board. The Authority's Step 4
representative, Artis, relied on that determination and the
Union's representative, Garland, knew that Artis would and did
rely on that decision. That is why, even though there was no
express understanding that no additional written decision was
expected or required, Artis and Garland had an understanding
that Artis would deny the grievance on the grievance form, as he
did, and Garland, without more, would proceed to take the matter
to the Union's executive board meeting later that month.[2]
Garland did just that, taking the matter to the Union's
executive board where he explained the Authority's position.
The board decided to drop the case. While the membership
evidently can overrule such decisions by the board -- or vote
not to accept the board's recommendation not to pursue
arbitration -- there is no evidence that the Union was waiting
for any sort of additional decision from management after the
executive board meeting before taking further action with
respect to this grievance.

---

[2] Obviously Artis could easily have written a one or two sentence
decision referring to the determination by the Accident Review
Board, if he thought the Union was looking for that sort of
amplification of his denial of the grievance. The fact that
before leaving the Authority in November Artis provided Step 4
written decisions for the other cases he and Garland discussed
on October 5 (with one possible exception) actually supports his
testimony that he thought he had an understanding with Garland
that no further written decision was required in this case. But
it is unnecessary to decide whether there was an implicit mutual
understanding to that effect.

11                    Michelle Ferguson

Although Garland testified that it was his expectation when he left the October 5, 2006 Step 4 conference with Artis that he would receive a written denial letter in this case ("I've always gotten denial letters from my fourth step grievances."), the Union was not waiting for any such letter before deciding whether to appeal to arbitration. There was no further explanation or rationale that it was expecting from the Authority. At best, Garland anticipated a pro forma denial letter as a follow-up to the Step 4 meeting at which Artis wrote "Denied" on the grievance. The Union, notably, took no steps to let Artis know it was awaiting a further denial letter, even though Garland knew Artis was leaving the Authority in November, and, according to Garland, he had received denial letters from Artis for all the other grievances (with one possible exception) they had discussed on October 5. In sum, the facts here are very different from those in Young and Powell. Any violation of Section 104(b) of the CBA by the Authority in this particular case was technical and harmless.

Under Section 104(b), the Authority was required to provide its Step 4 "written decision" within 20 working days of its receipt of the Step 3 Appeal. That period ended on or about October 20, 2006. The Union then let the case lie dormant for more than 110 days, almost twice as long as the 60-day period specified in the CBA, before it notified the Authority on February 9, 2007 that it was invoking arbitration. In this Board's opinion, under all of the relevant circumstances, that was an unreasonable delay and the grievance will be dismissed accordingly.

12                    Michelle Ferguson

AWARD

The grievance is dismissed on the basis set forth
in the above Findings.

Shyam Das, Chair [11-6-07]

D. Richard Froelke                Martin Hogan
Authority Arbitrator              Union Arbitrator

Concur                            Concurring and Dissenting
                                  Opinion attached

DISTRICT OF COLUMBIA
SUPERIOR COURT, CIVIL DIVISION

Civil Action No.  2008 CA 003492 B

In the Matter of:

MICHELLE FERGUSON,                          }
                                            }
                    Plaintiff,              }
                                            }
          vs.                               }
                                            }
LOCAL 689, AMALGAMATED TRANSIT              }
     UNION, JACQUELINE JETER,               }
     WAYNE GARLAND and MICHAEL              }
     GOLASH,                                }
                                            }
                    Defendants.             }
_____}

ANSWER AND MOTION TO DISMISS
OF DEFENDANT LOCAL 689, AMALGAMATED TRANSIT UNION

**ANSWER**

Defendant Local 689, Amalgamated Transit Union, now answers the complaint as follows:

1.      Defendant Local 689, ATU admits that Plaintiff Michelle Ferguson was a member of Local 689, Amalgamated Transit Union.

2.      Defendant Local 689, ATU admits that on June 29, 2006 Plaintiff Michelle Ferguson was discharged by WMATA from her position as Bus Operator.

3.      Defendant Local 689, ATU admits that Michelle Ferguson filed a grievance under

the collective bargaining agreement between Local 589, ATU and WMATA

protesting her discharge.

4.      Defendant Local 689, ATU admits that in a proceeding which commenced on

August 2, 2007, and by arbitration award dated November 6, 2007, (attached to

the Complaint)  the grievance was denied and Ms. Ferguson's discharge by

WMATA was sustained.

5.      Defendant Local 689, ATU denies that Plaintiff Michelle Ferguson is entitled to

any relief or damages whatsoever.

**AFFIRMATIVE DEFENSES**

I.      <u>FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE
        GRANTED.</u>

6.   Taking all of the allegations of the complaint as correct, the Plaintiff has not set

forth any claim upon which the court may grant relief or remedy to her.

II.     <u>LOCAL 689, ATU FULFILLED ITS DUTY TO REPRESENT
        PLAINTIFF FERGUSON FAIRLY, IN GOOD FAITH.</u>

7.      Defendant Local 689, ATU fairly and openly examined the grievance of the

Plaintiff against her discharge.

2

8.    Defendant Local 689, ATU did not mislead the Plaintiff.

9.    Defendant Local 689, ATU did not make any determination as to the Plaintiff or

as to the manner of proffering her grievance on the basis of her race, gender or

other illegal or impermissible category.

10.    Defendant Local 689, ATU did not act in an arbitrary manner with regard to

Plaintiff or her pending grievance.

11.    With regard to Michelle Ferguson, Defendant Local 689, ATU fulfilled it's

"obligation to serve the interests of all members without hostility or

discrimination toward any, to exercise its discretion with complete good faith and

honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 381 U.S. 171, 177 (1967)

III.    MICHELLE FERGUSON'S GRIEVANCE FOR REINSTATEMENT AS
A BUS OPERATOR WAS RESOLVED IN FINAL AND BINDING
ARBITRATION.

12.    Plaintiff Michelle Ferguson filed a grievance protesting her discharge by

WMATA.

13.    WMATA denied the grievance at all four steps of the contractual grievance

procedure, despite arguments made by Michelle Ferguson and by Defendant

Union on her behalf.

3

14.    Defendant Union Local 689, ATU, invoked binding arbitration under the parties'

collective bargaining agreement and under the WMATA enabling Act, which

requires that all labor disputes which are not resolved through collective

bargaining be submitted to "final and binding" arbitration.   D.C. Code Section 9-

1107.01-66(c).

15.    A Board of Arbitration resolved the matter and denied the grievance.

16.    No party, including grievant Ferguson, filed an action to modify or vacate the

award.

17.    The binding arbitration award precludes a determination in court to the effect that

the arbitration award was incorrect and grants the grievance to reinstate Michelle

Ferguson.

IV.    THE COURT MAY NOT CONCLUDE THAT PLAINTIFF FERGUSON
       WAS DISCHARGED WITHOUT SUFFICIENT CAUSE.

18.    Plaintiff Michelle Ferguson was on duty on June 8, 2006, when the WMATA

Metrobus she was operating collided with a female pedestrian who died as a result

of injuries sustained in the incident.

19.    WMATA officials investigated the collision and discharged Michelle Ferguson

from employment, after they concluded that the accident could have been

prevented by her and that she  "showed gross negligence, reckless conduct, and

disregard for the basic principals for bus safety."

4

20.   Plaintiff made no allegation which contradicts WMATA's conclusion.

21.   Plaintiff has not sued WMATA in this or any other action alleging that WMATA

has violated its contract with Local 689, ATU in that it discharged Plaintiff

Ferguson without sufficient cause.

22.   Accordingly, the court may only conclude that Michelle Ferguson was discharged

for sufficient cause, within the meaning of the collective bargaining agreement,

and that Ms. Ferguson may not be reinstated to duty as a bus operator.

V.    <u>TARDY CORRESPONDENCE BY THE UNION DOES NOT
CONSTITUTE BAD FAITH OR VIOLATE THE DUTY OF FAIR
REPRESENTATION BY THE UNION.</u>

23.   The Union officers and members voted to arbitrate the grievance of Michelle

Ferguson well before the deadline for sending a letter to WMATA to invoke

arbitration.

24.   Union Officers informed WMATA of the vote to arbitrate the Ferguson case,

actively discussed and negotiated with management officials to attempt the

resolve by settlement the grievance of Michelle Ferguson.

25.   Defendant Union sent an untimely letter to WMATA formally invoking

arbitration of the Ferguson grievance.

26.    The Board of Arbitration concluded that the Union sent a letter invoking

arbitration more than 60 days after the employer, WMATA, denied the grievance

of Michelle Ferguson.

27.    The Board of Arbitration concluded that this tardy correspondence violated the

parties' contractual requirements which are predicates to arbitration and,

accordingly, precluded the Board from compelling arbitration on the merits of the

grievance against the objection of WMATA.

28.    Negligent grievance handling in this case did not violate the Union's duty of fair

representation to Michelle Ferguson and cannot be the basis of any relief or award

of damages against the Union.

VI..    <u>POSSIBLE FUTURE EARNINGS AND OTHER DAMAGES DUE TO
POTENTIAL HARM TO THE PLAINTIFF ARE NOT AVAILABLE AS
REMEDIES IN THIS CASE.</u>

29.    The Plaintiff was discharged  by WMATA, June 29, 2006.  The arbitration award

denying her grievance was dated November 6, 2007.

30.    An arbitration award which granted the grievance, if such a award occurred,

would have issued no later than November 6, 2007.

31.    Damages assessed against the Union are limited to lost earnings and benefits

which accrued up to the point when, but for the action of the Union, the Plaintiff

would have been reinstated to duty.

6

32.    Even if the Plaintiff were to prevail against her union, damages would be limited

to  back-pay for the period between June 29, 2006 and November 6, 2007,

because the employer, WMATA, not the union, determined to discharge the

Plaintiff  from employment in the first place.

## MOTION TO DISMISS

The complaint should be dismissed for the following reasons, all apparent from

the face of the complaint itself:

1.    The complaint fails to state a claim upon which relief may be granted.  In

particular:

A.    the complaint does not dispute that Michelle Ferguson was

discharged for sufficient cause after she caused the death of a

pedestrian struck by the WMATA Metrobus she operated on duty.

B.    the complaint does not allege any act by the Defendant Union or by

any of its officers which constituted or arose from impermissible

discrimination or bad faith.

2.    The complaint demonstrates that any conceivable dispute over the discharge of

Michelle Ferguson was resolved in final and binding arbitration, as required by

the WMATA Act.  The Award was not challenged within the time required by law

and, accordingly, cannot be overturned indirectly by the plaintiff.

7

Accordingly, the complaint should be dismissed without further delay.

Defendant LOCAL 689, AMALGAMATED
TRANSIT UNION, by its counsel,

Douglas Taylor
Paul M. Tyler

Gromfine & Taylor
1727 King Street, Suite 210
Alexandria, VA   22314

(703) 683-7780

8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_MicHELLE FeAGuSoN_
Plaintiff

v.                                    Civil Action No.  **08 1030**

**JUN 1 7 2008**

_Local 689 AmALGAMATEd_
Defendant    _TRANSiT UNiON, ETAL_

    The above entitled action, removed from the Superior Court for the District of Columbia, has been filed and assigned to Judge ___**BATES, J. JDB**___. All counsel and/or pro se litigants must include on any subsequent pleadings both the civil action number and the initials of the judge assigned to this action. (See preceding sentence for judge's initials).

    Pursuant to Local Rule 83.2(a)(b), an attorney must be a member in good standing of the bar of this Court to appear, file papers or practice. To assist the Clerk's Office in properly recording all counsel of record, counsel for all parties must enter their appearance in accordance with our Local Rule 83.6(a). Timely compliance with this requirement will enable the Clerk's Office to ensure prompt delivery of notices and orders.

    Finally, your attention is called to Local Rule 16.3, Duty to Confer. This rule clearly spells out the duty of counsel, as well as pro se litigants, to confer and report back to the Court on a wide range of questions.

NANCY MAYER-WHITTINGTON, CLERK

By _Maureen Higgins_
     Deputy Clerk

cc: _MiCHELLE FeRGuSoN_

929A
Rev. 7/02