## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**MICHELLE FERGUSON,**

   **Plaintiff,**

      v.                                        Civil Action No.  08-1030 (JDB)

**LOCAL 689, AMALGAMATED
TRANSIT UNION, et al.,**

   **Defendants**

## MEMORANDUM OPINION

Plaintiff Michelle Ferguson brings this action against defendants Washington

Metropolitan Area Transit Authority ("WMATA") and Local 689, Amalgamated Transit Union

and three of its employees, sued in their official capacities only (together "Local 689").

WMATA discharged Ferguson from her position as a bus driver after her bus hit and killed a

pedestrian.  Ferguson alleges that WMATA discharged her without sufficient cause, in violation

of its collective bargaining agreement with Local 689.  She further alleges that Local 689

breached its duty of fair representation under section 301 of the Labor Management Relations

Act, 29 U.S.C. § 185, by handling the grievance proceedings following her discharge in an

arbitrary and perfunctory manner.  Ferguson also asserts claims against the defendants for

intentional infliction of emotional distress ("IIED").  Currently before the Court are motions to

dismiss from WMATA and Local 689.  For the reasons discussed below, WMATA's motion to

dismiss will be granted and Local 689's motion to dismiss will be denied.[1]

## BACKGROUND

WMATA employed Ferguson as a bus driver from September 6, 2002 until June 29, 2006.  Am. Compl. ¶¶ 6, 10.  During this time, Ferguson was covered by the terms of the collective bargaining agreement between WMATA and Local 689.  Id. ¶ 7.  On June 8, 2006, Ferguson's bus hit a pedestrian, who later died from injuries sustained in the collision.  Id. ¶ 9.  Soon thereafter, WMATA discharged Ferguson after determining that the accident was "major" and "preventable," and that the accident resulted from her gross negligence, reckless conduct, and disregard for the basic principles of bus safety.  Id. ¶¶ 10-11.  Ferguson contends that WMATA knew that the allegations against her were false and conspired with Local 689 to prevent her from adequately defending herself against these allegations.  Id. ¶¶ 25-26.

On July 10, 2006, Ferguson filed a grievance protesting her discharge.  Id. ¶ 14. WMATA subsequently denied Ferguson's grievance at each of the four required administrative steps.  Id. ¶ 16.  At all times during the grievance proceedings, defendant Wayne Garland, an employee of Local 689, represented Ferguson.  Id. ¶¶ 3, 15.  On February 9, 2007, after the 60-day window within which to file an arbitration request had lapsed, Local 689 requested arbitration of Ferguson's grievance.  Id. ¶¶ 18-19.  On November 6, 2007, the Board of Arbitration declined to hear the merits of Ferguson's grievance because Local 689 filed the request in an untimely manner.  Id. ¶ 20.

---

[1] Ferguson's third claim for relief (Count III) appears to be a separate claim for punitive damages.  Am. Compl. ¶¶ 29-30.  Punitive damages are a remedy, not a freestanding ground for relief.  Mazloum v. D.C. Metro. Police Dep't, 522 F. Supp. 2d 24, 42 (D.D.C. 2007).  Therefore, Count III will be dismissed.

Ferguson alleges that until about August 23, 2008, she believed that she would return to work for WMATA.  Ferguson Aff. ¶ 3.  She identified three occasions on which she asked WMATA attorneys when she would be able to return to work.  Id. ¶¶ 8, 10, 12.  First, a WMATA attorney told Ferguson that WMATA was "going to do one thing at a time," indicating that WMATA would address Ferguson's unemployment benefits before determining whether Ferguson would return to work.  Id. ¶ 8.  Next, WMATA attorneys told Ferguson that WMATA "wanted to get everything proven first and . . . get things on paper," which Ferguson took to mean resolving the underlying lawsuit brought by the pedestrian's family before addressing her inquiry. Id. ¶ 10.  Finally, after WMATA failed to return several of Ferguson's phone calls, a WMATA attorney told Ferguson that she should "contact the union."  Id. ¶ 12.  After her discharge, Ferguson claims that she was initially unable to receive unemployment benefits because of WMATA's determination that her gross negligence contributed to the bus accident.  Id. ¶ 4. Later, Ferguson says that a WMATA attorney told her that WMATA was "tired of fighting" and would grant her unemployment benefits.  Id. ¶ 8.

Ferguson filed a pro se complaint against Local 689 in the Superior Court of the District of Columbia on May 5, 2008 and Local 689 removed the case to this Court soon thereafter.  On December 1, 2008, Ferguson, with the help of counsel, filed a motion for leave to amend the complaint to add WMATA as a defendant.  That motion was granted on December 17, 2008. WMATA then filed a motion to dismiss on January 9, 2009.  WMATA argues, primarily, that the claims against it should be dismissed because it was added to the suit after the applicable statute of limitations had run.  WMATA Mot. Dismiss at 1.  Local 689 filed a motion to dismiss on January 15, 2009 in which it contends that the claims against it should be dismissed because

Ferguson fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

Local 689 Answer & Mot. Dismiss at 8.

## <u>LEGAL STANDARD</u>

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)); <u>accord</u> <u>Erickson v. Pardus</u>, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555-56; <u>see also</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570); <u>Atherton v. District of Columbia Office of the Mayor</u>, --- F.3d ---, 2009 WL 1515373, at *6 (D.C. Cir. 2009). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949. This amounts to a "two-pronged approach" under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 1950-51.

The notice pleading rules are not meant to impose a great burden on a plaintiff. <u>Dura</u>

Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534

U.S. 506, 512-13 (2002).  When the sufficiency of a complaint is challenged by a motion to

dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should

be liberally construed in his or her favor.  Leatherman v. Tarrant County Narcotics &

Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968

(D.C. Cir. 1979); see also Erickson, 127 S. Ct. at 2200 (citing Twombly, 127 S. Ct. at 1965)).

The plaintiff must be given every favorable inference that may be drawn from the allegations of

fact.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d

1111, 1113 (D.C. Cir. 2000).  However, "the court need not accept inferences drawn by plaintiffs

if such inferences are unsupported by the facts set out in the complaint."  Kowal v. MCI

Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nor does the court accept "a legal

conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct]

devoid of further factual enhancement."  Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks

omitted); see also Aktieselskabet AF 21. November 21 v. Fame Jeans Inc., 525 F.3d 8, 17 n.4

(D.C. Cir. 2008) (explaining that the court has "never accepted legal conclusions cast in the form

of factual allegations").

## ANALYSIS

**I.      WMATA's Motion to Dismiss**

With respect to WMATA, the core of Count I is a claim for breach of a collective

bargaining agreement.  Am. Compl. ¶ 10.  This claim is brought pursuant to section 301 of the

Labor Management Relations Act, which governs suits for the violation of contracts between

employers and labor unions.  29 U.S.C. § 185.  Count I also contains a claim against Local 689

for breach of its duty of fair representation -- a type of claim "which is implied under the scheme of the National Labor Relations Act." <u>DelCostello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 151, 164 (1983). Together, then, Count I raises a "hybrid § 301/fair representation claim," which is subject to the six-month statute of limitations set forth in section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). <u>DelCostello</u>, 462 U.S. at 154-55, 165; <u>Simmons v. Howard Univ.</u>, 157 F.3d 914, 916 (D.C. Cir. 1998). Section 10(b)'s statute of limitations begins to run when the claimant discovers or should have discovered the acts constituting the alleged violation. <u>Simmons</u>, 157 F.3d at 916. Neither party disputes that Ferguson added WMATA as a defendant more than six months after the date on which the statute of limitations began to run -- <u>i.e.</u>, when the Board of Arbitration denied her request for arbitration in November 2007. WMATA Reply at 2. WMATA argues, therefore, that because it was made a party after the statute of limitations had run, the hybrid claim (Count I) is time-barred as to WMATA and must be dismissed. <u>Id.</u> at 1. It also asserts that Ferguson's IIED claim (Count II) must be dismissed because WMATA is immune from this type of tort claim. <u>Id.</u> at 3. In response, Ferguson contends that her claims against WMATA are timely because they relate back to the date of the original complaint. Pl.'s Opp'n to WMATA Mot. at 3. Alternatively, she asserts that the Court should equitably toll the statute of limitations. Pl.'s Surreply to WMATA Mot. at 1-3. She also argues that her IIED claim does not fall within WMATA's tort immunity. Pl.'s Opp'n to WMATA Mot. at 7-8.

A.      **Statute of Limitations**

Ferguson first contends that the claims against WMATA in her amended complaint relate back to the date of her original complaint because they arise from the same "conduct, transaction, or occurrence." <u>Id.</u> at 3. Thus, according to Ferguson, her claims against WMATA were timely

filed.  Id.  WMATA responds that relation back does not apply because Ferguson cannot meet the additional requirements of notice and mistaken identity set forth in Fed. R. Civ. P. 15(c)(1)(C). WMATA Reply at 3.  The Court agrees with WMATA that because the requirement of mistaken identity is not met, the claims against WMATA in the amended complaint do not relate back and hence are time-barred.

When an amendment to a pleading adds a party, the amendment relates back to the date of the original complaint if it asserts a claim that arises from the same conduct, transaction, or occurrence set forth in the original complaint, and "the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."  Rendall-Speranza v. Nassim, 107 F.3d 913, 917 (D.C. Cir. 1997); see Fed. R. Civ. P. 15(c)(1).  This Circuit reads the "mistaken identity" requirement in a straightforward manner, and recognizes that Rule 15(c)(1)(C) is a name-correcting amendment that is intended to avoid the harsh consequences of a mistake.  Rendall-Speranza, 107 F.3d at 918; see also Fed. R. Civ. P. 15 advisory committee note (acknowledging that Rule 15(c)(1)(C) deals with "the problem of a misnamed defendant").  Thus, a potential defendant is entitled to the repose afforded by a statute of limitations unless it is apparent that the defendant was left out of the suit as the result of a "mere slip of the pen."  Rendall-Speranza, 107 F.3d at 918.

Ferguson did not delay in adding WMATA as a party due to mistaken identity.  As WMATA correctly asserts, Ferguson was obviously aware of the identity of her employer at the time she filed the original complaint.  WMATA Reply at 2.  Moreover, Ferguson's original

complaint contains multiple references to WMATA, yet it did not name WMATA as a party.

Compl. ¶ 1.  Hence, Ferguson's failure to name WMATA as a defendant in the original complaint

could not have been the result of an accidental "slip of the pen."  Consequently, the claims

against WMATA do not relate back to the original complaint and should be dismissed pursuant

to section 10(b)'s six-month statute of limitations, unless Ferguson can identify an equitable basis

why the statute of limitations should not be dispositive.[2]

**B.      Equitable Estoppel and Equitable Tolling**

Ferguson argues that the Court should equitably toll the statute of limitations to allow her

to proceed with her suit against WMATA.[3]  Pl.'s Surreply to WMATA Mot. at 1-3.  Ferguson

contends that because WMATA led her to believe that she would be rehired, it should be

estopped from asserting the statute of limitations as a defense.  Id. at 2-3.  WMATA responds

---

[2] Ferguson argues that because she was proceeding pro se at the time she filed her original complaint, she is entitled to a liberal construction of that complaint, which would allow her claims against WMATA to go forward regardless of the relation back rule set forth in Rule 15(c). Pl.'s Opp'n to WMATA Mot. at 6-7.  Although it is true that courts liberally construe pro se filings, see Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999), a case in which a plaintiff fails to meet a statutory deadline but attributes it to her pro se status is not one in which a court should toll the statute of limitations.  See United States v. Lawson, 608 F. Supp. 2d 58, 62 (D.D.C. 2009).

[3] In her surreply, Ferguson addresses the distinct but similar doctrines of equitable estoppel and equitable tolling.  Pl.'s Surreply to WMATA Mot. at 1-3; see Dove v. Wash. Metro. Area Transit Auth., 402 F. Supp. 2d 91, 97 (D.D.C. 2005).  Equitable estoppel precludes a defendant from raising the statute of limitations as a defense because of his own inequitable conduct, such as when a defendant tells a claimant that it will not assert the statute of limitations. Dove, 402 F. Supp. 2d at 97.  Equitable tolling applies when a plaintiff is unable to obtain information vital to her claim, despite exercising due diligence.  Id.  Although the doctrine of equitable estoppel is more relevant to the facts of this case, the Court considered both doctrines in determining whether equity requires that Ferguson be afforded relief from the statute of limitations.

8

that equitable estoppel is only applicable in exceptional circumstances, which are absent here.[4]

See WMATA Reply to Pl.'s Surreply at 3-4.  Courts will only equitably toll a statute of

limitations in extraordinary circumstances.  Mondy v. Sec'y of the Army, 845 F.2d 1051, 1057

(D.C. Cir. 1988).  In general, courts may equitably toll a statute of limitations where "'a claimant

has received inadequate notice, . . . where a motion for appointment of counsel is pending and

equity would justify tolling the statutory period until the motion is acted upon, . . . where the

court has led the plaintiff to believe that she had done everything required of her, . . . [or] where

affirmative misconduct on the part of a defendant lulled the plaintiff into inaction.'"  Id. (quoting

Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984)).

        The factual allegations set forth in Ferguson's affidavit simply do not demonstrate that

any of these extraordinary circumstances were present here.  In this case, the issue of affirmative

misconduct is most relevant.  See Pl.'s Surreply to WMATA Mot. at 2.  Ferguson alleges that she

repeatedly asked WMATA attorneys when she would be able to return to work.  Ferguson Aff. ¶¶

8, 10, 12.  A WMATA attorney told Ferguson that WMATA was "going to do one thing at a

time," indicating that WMATA would address Ferguson's unemployment benefits before

determining whether Ferguson would return to work.  Id. ¶ 8.  Then, WMATA attorneys told

Ferguson that WMATA "wanted to get everything proven first and . . . get things on paper,"

which Ferguson took to mean resolving the underlying lawsuit brought by the pedestrian's family

before addressing Ferguson's inquiry.  Id. ¶ 10.  Finally, after WMATA failed to return several of

---

        [4] WMATA also argues that Ferguson's surreply should be disregarded because surreplies
are not permitted by this Court's rules.  WMATA Reply to Pl.'s Surreply at 2; see Local Civ. R. 7.
It is well-established that "[a] surreply may be filed only by leave of Court."  United States v.
Baroid Corp., 346 F. Supp. 2d 138, 143 (D.D.C. 2004).  Although Ferguson did not seek leave to
file a surreply, the Court will, nevertheless, consider it in resolving WMATA's motion.

Ferguson's phone calls, a WMATA attorney told Ferguson that she should "contact the union." Id. ¶ 12.  At most, these allegations show that WMATA was not entirely forthcoming with Ferguson following her discharge.  Such actions, however, do not rise to the level of affirmative misconduct.  See, e.g., Delaney v. District of Columbia, No. 08-1651, 2009 WL 1177015, at *3 (D.D.C. May 4, 2009) ("Failure to return phone calls does not constitute affirmative misconduct that would give rise to equitable tolling."); Dove, 402 F. Supp. 2d at 97 ("Absent . . . a showing [that the defendant intentionally misled the plaintiff,] the plaintiff's claim [for equitable tolling] fails.").  Because Ferguson's allegations do not meet the high standard required for a court to equitably toll the statute of limitations, the Court concludes that WMATA should not be estopped from asserting the statute of limitations as a defense and, accordingly, Count I of the amended complaint will be dismissed as to WMATA.

### C.    Intentional Infliction of Emotional Distress

Ferguson also asserts an IIED claim against WMATA.  Am. Compl. ¶ 27.  WMATA contends that it is immune from Ferguson's IIED claim.[5]  WMATA Reply at 3-4.  In response, Ferguson argues that because WMATA committed this tort during the performance of a proprietary, rather than discretionary, function, WMATA's actions are not subject to its tort immunity.  See Pl.'s Opp'n to WMATA Mot. at 8.

Under the WMATA Compact, WMATA waives its immunity with respect to torts committed in the conduct of any proprietary function, while retaining immunity for torts committed in the performance of governmental functions.  Beebe v. Wash. Metro. Area Transit

---

[5] WMATA also argues that Ferguson's IIED claim is not separate from her other claims. WMATA Reply at 3.  However, the Court finds that the IIED claim (Count II) is distinct from Ferguson's hybrid section 301/fair representation claim (Count I) and must be evaluated separately.

Auth., 129 F.3d 1283, 1287 (D.C. Cir. 1997).  Courts often distinguish between proprietary and governmental functions by defining "discretionary" actions as governmental, and thus within the scope of WMATA's tort immunity, while leaving "ministerial" actions outside the scope of this immunity.  Id.  This Circuit has held that employment decisions such as the "hiring, training, and supervising of WMATA employees" are discretionary activities that fall within WMATA's tort immunity.  Id. (citing Burkhart v. Wash. Metro. Area Transit Auth., 112 F.3d 1207, 1217 (D.C. Cir. 1997)); see also Chester v. Wash. Metro. Area Transit Auth., 335 F. Supp. 2d 57, 61 (D.D.C. 2004) (holding that the WMATA Compact provides the defendant with immunity from a wrongful termination tort claim).  Because WMATA's decision to discharge Ferguson is a discretionary activity, Ferguson's IIED claim in Count II based on that decision falls squarely within WMATA's immunity from tort claims under the WMATA Compact.  Therefore, the Court will dismiss Ferguson's IIED claim against WMATA (Count II).  Hence, all claims against WMATA will be dismissed and WMATA will be dismissed from this case as a party defendant.

## II.    Local 689's Motion to Dismiss

Defendant Local 689 argues that the amended complaint fails to state a claim upon which relief can be granted, and that Ferguson's dispute regarding her discharge has already been resolved in a final and binding arbitration.[6]  Local 689 Answer & Mot. Dismiss at 8.  In response, Ferguson points to specific allegations in her complaint that she believes state a claim against Local 689 for breach of its duty of fair representation.  Pl.'s Opp'n to Local 689 Mot. ¶¶ 3-5, 7, 9. The Court finds that Ferguson has alleged sufficient facts to go forward with her claims against

---

[6] Count II of the amended complaint also asserts an IIED claim against Local 689.  Am. Compl. ¶ 27.  Because Local 689's motion to dismiss and Ferguson's opposition to that motion do not address this claim, the Court will not consider it at this time.

11

Local 689 at the motion to dismiss stage.

As discussed above, Count I is a hybrid section 301/fair representation claim.  The latter part of that claim is a breach of duty of fair representation claim against Local 689.  The Supreme Court has recognized that such claims are implied under the National Labor Relations Act because an employee subject to a collective bargaining agreement is bound by the result of the grievance and arbitration procedures set forth in that agreement unless the union represents the employee "in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation."  DelCostello, 462 U.S. at 163-64.  Ferguson alleges that Local 689 represented her in just such a manner.  Specifically, she alleges that the union failed to thoroughly investigate her accident, failed to contact witnesses to the accident, and requested arbitration of the grievance protesting her discharge in an untimely fashion.  Am. Compl. ¶¶ 12, 19-21.  Assuming the facts in Ferguson's amended complaint to be true, and drawing all reasonable inferences in her favor, as the Court must, see Scheuer, 416 U.S. at 236, it is clear that Ferguson's complaint states a claim for breach of duty of fair representation against Local 689 "that is plausible on its face," Iqbal, 129 S. Ct. at 1949.  As alleged, the facts would appear to demonstrate that Local 689 did act in a "discriminatory, dishonest, arbitrary, or perfunctory fashion" in representing Ferguson during the grievance process.  Accordingly, the Court will deny Local 689's motion to dismiss and all remaining claims against the union, and its three employees who are also named defendants, will proceed.

## CONCLUSION

For the foregoing reasons, the Court will dismiss Count III of the amended complaint, it will grant WMATA's motion to dismiss and it will deny Local 689's motion to dismiss.

12

WMATA will be dismissed as a party to this action, but Ferguson will be allowed to proceed with Counts I and II against Local 689.  A separate Order accompanies this Memorandum Opinion.


_____/s/_____
JOHN D. BATES
United States District Judge

Dated:   June 19, 2009